UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY CLEARY,

        Plaintiff,

vs.                              Hon. Bernard A. Friedman

CORELOGIC RENTAL PROPERTY    Case No. 2:17-cv-14158-BAF-DRG
SOLUTIONS, LLC,

        Defendant.

---

## DEFENDANT CORELOGIC RENTAL PROPERTY SOLUTIONS, LLC'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL <u>PRODUCTION OF DOCUMENTS OVER OBJECTIONS</u>

### <u>Issues Presented</u>

Whether the Court should deny Plaintiff's Motion to Compel and limit the scope of discovery to issues relevant to Plaintiff's claims.

### <u>Table of Principal Authorities Cited</u>

Fed. R. Civ. P. 26(b)(1)
Fed. R. Civ. P. 37(a)(1)
L.R. 37.1

Defendant CoreLogic Rental Property Solutions, LLC ("CoreLogic"), through its counsel, submits this Opposition to Plaintiff Randy Cleary's ("Plaintiff") Motion to Compel Production of Documents from CoreLogic Over Objections (the "Motion to Compel"), filed on October 18, 2018. For the reasons set forth below, the Court should issue an order denying Plaintiff's Motion to Compel and limiting further discovery in this matter to the issues relevant to Plaintiff's claims.[1]

## I.    **INTRODUCTION**

Plaintiff has alleged CoreLogic violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, by failing to maintain reasonable procedures to assure maximum possibly accuracy of the information it included in a consumer report regarding Plaintiff that was provided in connection with Plaintiff's application for housing in April 2016. Plaintiff cannot, as a matter of law, dispute that the information CoreLogic included in his consumer report accurately reported the public records maintained by the Michigan and Ohio judicial systems. Plaintiff rather argues that CoreLogic should have known he was the victim of identity theft, despite the lack of publicly available information to that effect.

---

[1] On the afternoon of October 18, 2018, following extended negotiations, the parties agreed upon a Stipulated Protective Order that CoreLogic has submitted to the Court. The parties' entry into the Stipulated Protective Order has mooted Plaintiff's pending Motion for Protective Order. To the extent the Motion for Protective Order is not timely withdrawn, CoreLogic reserves the right to assert all of its arguments in opposition thereto.

4825-2446-4762.1

Plaintiff continues to pursue these claims despite his undeniable failure to notify CoreLogic, or the nationwide consumer reporting agencies (*i.e.*, Equifax, Experian, and TransUnion (together, the "Bureaus")), of the alleged identity theft, as well as his failure to dispute the contents of the consumer report at issue with CoreLogic, as prescribed by the FCRA.

Over several months, Plaintiff has embarked on a fishing expedition in a misguided attempt to hold CoreLogic responsible for identity thief's actions. These efforts have included Plaintiff's service of overbroad interrogatories and requests for production directed at CoreLogic, along with deposition and business records subpoenas to eight third-party private and government entities. Critically, the court records obtained by both parties directly undercut Plaintiff's purported claims.

In response to Plaintiff's interrogatories and requests for production, CoreLogic provided timely[2] responses that incorporated reasonable objections asserted in good faith. Contrary to Plaintiff's assertions in the Motion to Compel, CoreLogic provided substantive responses to several of Plaintiff's discovery requests and further committed to produce documents. CoreLogic has since

---

[2] Plaintiff incorrectly claims CoreLogic missed its deadline for serving responses to Plaintiff's discovery requests. Plaintiff's interrogatories and requests for production were served via U.S. Mail on July 6, 2018. Rule 6(d) of the Federal Rules of Civil Procedure adds 3 days to the 30-day deadline for responding when requests are served via U.S. Mail, making August 8, 2018 CoreLogic's original deadline for serving responses. CoreLogic obtained an extension of the response deadline on August 8, 2018.

4825-2446-4762.1

produced a substantial set of documents responsive to Plaintiff's requests for production, and has additionally (and repeatedly) committed to produce a supplementary set of confidential documents upon the parties' execution of a mutually agreeable stipulated protective order. Rather than work collaboratively with CoreLogic, Plaintiff filed his Motion to Compel four days before the production deadline specified in Plaintiff's meet and confer correspondence.

CoreLogic's financial information, organization materials, and internal policies and procedures have no bearing on Plaintiff's claims, and he is not entitled to discovery of highly sensitive, proprietary, and completely irrelevant documents. Accordingly, CoreLogic respectfully requests that the Court deny Plaintiff's Motion to Compel and issue an order limiting further discovery in this matter to the issues relevant to Plaintiff's claims.

## II.   RELEVANT FACTS

In his First Amended Complaint, Plaintiff specifically alleges he "has been the victim of identity theft since 1987, when a criminal began providing Mr. Cleary's name to police when he was arrested." (FAC ¶ 13.) In May 2012, Plaintiff initiated a lawsuit in this Court regarding an overlapping set of issues. *See Randy Cleary v. Daniel Heyns*, No. 12-11988, 2014 WL 1118382 (E.D. Mich. Mar. 21, 2014). In the *Heyns* lawsuit, Plaintiff sued Michigan's Secretary of State, the Directors of Michigan's Department of Corrections and Department of Human Services, and the

Chief Information Officer of the Department of Management, Budget and Technology, alleging that "various State of Michigan agencies placed and maintained [a] meritless conviction on Plaintiff's criminal record by associating him with the person responsible for stealing his identity, an association that Plaintiff alleges prevented him from attaining gainful employment." *Id.* at * 2. This Court denied Plaintiff's motion for summary judgment against each of the defendants, thereby denying his request that the relevant state records be corrected, and further granted the defendants' cross-motion for summary judgment, dismissing Plaintiff's claims in full. *Id.* at *13.

The Court in *Heyns* further found the following with respect to Plaintiff's history of identity theft, including Plaintiff's name changes and failure to renew an identity theft "flash" on his driver's license that expired in 2006:

> Since 1987, another individual has used Plaintiff's identity during that person's encounters with law enforcement. Plaintiff points to at least six prior occasions where the State of Michigan has suspended Plaintiff's driver's license or associated Plaintiff with the actions of his identity thief. As a result of these incidents, Plaintiff has been assessed numerous fines and <u>has legally changed his name twice</u>. Notably, in 1999, Plaintiff had a "driver license alert"—or "flash"—placed on his driver's license so as to alert law enforcement officers that Plaintiff's name had been used by another individual and that they should ask for sufficient identification whenever Plaintiff's name and date of birth were used during a traffic stop. <u>Plaintiff did not renew the "flash" when it expired in 2006.</u>

*Cleary v. Heyns*, 2014 WL 1118382, at *2-3 (emphasis added).

On April 18, 2016, Plaintiff applied for a residential lease at Brighton Sylvan Glen Estates ("Brighton"). Brighton requested, and CoreLogic prepared and provided, a consumer report regarding Plaintiff that incorporated publicly available information attributed to Plaintiff by the courts of Michigan and Ohio. The consumer report at issue, dated April 18, 2016, listed records for the following crimes and offenses: (1) breaking and entering in Monroe County, Michigan (June 2007); (2) unarmed robbery in Wayne County, Michigan (December 1987); (3) escape from prison in Wayne County, Michigan (September 1988); and (4) minor misdemeanor speeding in Auglaize County, Ohio (May 2010). Each of these offenses was attributed to Plaintiff through one of his two prior names, Randy Reitz and Randy Reetz.

The parties worked in parallel to obtain current copies of court records from the Monroe and Wayne County courts in Michigan, as well as the Auglaize County court in Ohio. All of these records reflect that an individual named Randy Reetz (sometimes Randy William Reetz), with the same birthdate as Plaintiff, was the subject of criminal proceedings in those state courts. Several of the court records additionally feature identifying information (*i.e.*, social security number, offender number, race, eye color, height, and weight) that are consistent with the information CoreLogic included in its consumer report.

Plaintiff cannot reasonably expect that a name change will automatically disassociate him from all existing records attributable to Randy Reetz, his former legal name. The fact remains that Plaintiff allowed his driver's license "flash" to lapse in 2006, and CoreLogic's records reflect that Plaintiff never placed an identity theft alert with the Federal Trade Commission, or the Bureaus, which would have alerted CoreLogic to the fact of Plaintiff's identity theft.

Due to Plaintiff's failure to file identity theft alerts, at the time CoreLogic prepared Plaintiff's consumer report in April 2016, it had no way to know that Plaintiff had been a victim of identity theft, as alleged in the First Amended Complaint. CoreLogic fulfilled its statutory obligations by reporting exactly what was in the state courts' records, and there is nothing in CoreLogic's policies and procedures, organizational materials, financial documents, third-party agreements, and reports of unrelated disputes that could possibly be relevant to the disposition of Plaintiff's claims.

Plaintiff's grievances with the report at issue could very easily have been resolved by providing CoreLogic verbal or written notice that he was disputing the contents of the consumer report at issue. Had Plaintiff submitted to CoreLogic an identity theft affidavit, as set forth in the FCRA, CoreLogic's procedures would have required it to investigate the claim and ultimately suppress the records at issue from any future consumer reports that CoreLogic may provide regarding Plaintiff. Indeed,

CoreLogic's counsel asked Plaintiff's counsel several times throughout the pendency of this litigation to provide an identity theft affidavit so that the records could be suppressed. Plaintiff simply refused to provide the very information that would have provided him the relief he seeks.

Nonetheless, CoreLogic has since, of its own accord, suppressed the Michigan criminal records at issue based on a private letter from the Michigan State Police to Plaintiff dated October 12, 2011 ("Michigan Letter") that CoreLogic obtained from Plaintiff during discovery in this matter.  The Michigan Letter certifies that as of the date of the letter, "there is no criminal history information on file meeting Michigan dissemination criteria regarding" "Randy William Cleary," and states Plaintiff was likely a victim of identity theft. CoreLogic understands, based on meet and confer communications, that Plaintiff and his counsel have been in possession of this Michigan Letter since the date of its issuance in October 2011. Plaintiff withheld the Michigan Letter from CoreLogic until it was recently provided as an attachment to a deposition subpoena directed at the Michigan State Police.

Despite the fact that Plaintiff never previously provided CoreLogic with notice of identity theft, or a copy of the Michigan Letter, Plaintiff has served first-party and third-party discovery that is harassing in volume and scope. Specifically, Plaintiff served subpoenas on three Better Business Bureau entities, three state attorneys general, and the federal Consumer Financial Protection Bureau, seeking

8

records reflecting unrelated complaints initiated against CoreLogic. Plaintiffs further subpoenaed Brighton and noticed the depositions of the persons most knowledgeable for the Michigan State Police, Michigan Department of Corrections, and Wayne County Clerk's Office,[3] as well as CoreLogic's representative most qualified on 33 topics and 40 sub-topics.

Plaintiff additionally served extensive requests for production on CoreLogic, seeking broad disclosure of documents falling into 36 categories—most of which are completely irrelevant to Plaintiff's claims. CoreLogic remains baffled as to why Plaintiff is in need of such expansive information when Plaintiff has the one document in his possession—the Michigan Letter—that gives Plaintiff the information he needs to prevent the criminal records at issue from being associated with his consumer report.

Nonetheless, CoreLogic agreed to produce documents in response to five of these 36 categories (RFP Nos. 1, 2, 34, 35, and 36), and further committed to produce documents responsive to one more category (RFP No. 7) "[u]pon the Court's entry of a stipulated protective order in this matter governing the treatment of confidential documents and information." CoreLogic requires this condition to protect confidential, highly sensitive, and proprietary documents, many of which implicate

---

[3] The Wayne County Clerk's Office recently objected to Plaintiff's Deposition Subpoena. CoreLogic expects this issue will be brought before the Court in the near term.

third-party rights to privacy, from unprotected disclosure. As a compromise, CoreLogic agreed to produce these confidential documents upon the parties' execution of a mutually agreeable protective order.

To date, CoreLogic has produced 61 pages of responsive documents comprising the following: Plaintiff's consumer file disclosure request and supporting documents (CORELOGIC000001-000006); CoreLogic's internal notes relating to Plaintiff's disclosure request (CORELOGIC000007-000008); various non-confidential documents bearing on CoreLogic's relationship with Brighton's parent company, First Holding Management Company (CORELOGIC000009-000012); CoreLogic's adverse action letter to Plaintiff and accompanying consumer report (CORELOGIC000013-000028); CoreLogic's records related to Plaintiff's disclosure requests (CORELOGIC000029-000058); and CoreLogic's completed FOIA forms from the Michigan Department of Corrections (CORELOGIC000059-000061). CoreLogic has additionally marked the following documents for production upon the parties' execution of a protective order: the raw data (including the content of the public record data) used to populate the consumer report at issue; CoreLogic's service agreement with First Holding Management Company; CoreLogic's sub-account form for Brighton; and CoreLogic's record of physical inspection of First Holding Management Company's business location.

Plaintiff's counsel previously proposed the adoption of two unsatisfactory protective orders, neither of which adequately addressed CoreLogic's obligations under the Federal Trade Commission's Safeguards Rule and other authorities regulating the disclosure and retention of consumer information, as well as CoreLogic's broader concerns regarding the manners in which highly sensitive and proprietary information might later be used by Plaintiff or his counsel. For that reason, CoreLogic engaged in good faith discussions with Plaintiff that were directed at negotiating a mutually agreeable protective order.  On the afternoon of October 18, 2018, following extended negotiations, the parties agreed upon a Stipulated Protective Order that CoreLogic has submitted to the Court.

As to the documents that CoreLogic has refused to produce in response to Plaintiff's remaining requests for production, CoreLogic must continue to object for a number of reasons. First, the requested documents are not relevant to Plaintiff's allegations, nor are they reasonably calculated to lead to the discovery of admissible evidence. Beyond the critical issue of relevance, many of these documents implicate third-party rights to privacy, as well as CoreLogic's obligation to protect its highly sensitive and proprietary information.

As to Plaintiff's 18 interrogatories, CoreLogic provided substantive responses to 7 interrogatories and further committed to produce documents in response to an additional 4. CoreLogic has produced those documents. Plaintiff's 7 remaining

interrogatories are harassing, impose an undue burden on CoreLogic, and seek the disclosure of privileged information, as well as highly sensitive and proprietary information with no relevance to Plaintiff's claims. While Plaintiff does not (yet) seek to compel CoreLogic's further responses to his interrogatories, they are indicative of Plaintiff's invasive and overly broad approach to discovery.

## III.   OBJECTIONS AND RESPONSES TO DISCOVERY REQUESTS

Rather than paraphrase and arbitrarily group its specific and carefully prepared objections and responses to Plaintiff's 36 requests for production of documents, CoreLogic refers the Court to the objections and responses dated September 13, 2018, and attached as Exhibit 2 to Plaintiff's Motion to Compel. CoreLogic's objections are well-reasoned, and for the reasons set forth in the Argument section below, the Court should affirm these objections over Plaintiff's attempts at impermissible discovery.

## IV.   ARGUMENT

### A.   The Court Should Deny Plaintiff's Motion to Compel and Limit Further Discovery

Plaintiff's Motion to Compel is a misguided fishing expedition directed at holding CoreLogic responsible for the actions of an identity thief. Plaintiff's discovery is entirely unreasonable and harassing in scope.   For the reasons set forth

below, CoreLogic respectfully requests the Court deny Plaintiff's Motion to Compel and limit further discovery to the relevant issues in this case.

1.  Legal Standard

Determining the scope of discovery is within this Court's discretion. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). "In considering the scope of discovery, the Court may balance Plaintiff's right to discovery with the need to prevent 'fishing expeditions.'" *Fleming v. Honda of America Mfg., Inc.*, 2017 U.S. Dist. LEXIS 161578, at *6 (S.D. Ohio Sept. 28, 2017) (citing *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 907 (6th Cir. 2009)).

Rule 26(b)(1) of the Federal Rules of Civil Procedure describes the limits of permissible discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that <u>is relevant to any party's claim or defense and proportional to the needs of the case</u>, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

(emphasis added). "Rule 26(b)(1) emphasizes the principle of proportionality, stating that discovery should be 'proportional to the needs of the case . . . and whether the burden or expense of the proposed discovery outweighs the benefit.'" *Solo v. United Parcel Service Co.*, 2017 U.S. Dist. LEXIS 3275, at *5 (E.D. Mich. Jan. 10,

2017). "Linking the concepts of cooperation and proportionality, the Advisory Committee's Notes to Rule 1 state, 'Effective advocacy is consistent with—and indeed depends upon—cooperative and proportional use of procedure.' These principles are particularly important when, as here, the discovery sought comprehends a broad-ranging and massive amount of data." *Id.* (citing 2015 Advisory Committee Notes to Fed. R. Civ. P. 1) (emphasis added). "[T]he court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Finally, the parties to an action are expected to meet and confer in good faith before bringing discovery issues before the Court. *See* Fed. R. Civ. P. 37(a)(1); E.D. Mich. L.R. 37.1. Local Rule 37.1 specifically provides:

> With respect to all motions to compel discovery, counsel for each of the parties or a party without counsel shall confer in advance of the hearing in a good faith effort to narrow the areas of disagreement. The conference shall be held a sufficient time in advance of the hearing so as to enable the parties to narrow the areas of disagreement to the greatest possible extent. It shall be the responsibility of counsel for the movant or a party without counsel to arrange for the conference.

*Id.* (emphasis added). "This generally contemplates some kind of face-to-face or telephonic meeting." *Int'l IP Holdings, LLC v. Green Planet, Inc.*, 2017 U.S. Dist. LEXIS 8693, at *6 (E.D. Mich. Jan 23, 2017). "In certain cases, the movant may explain the efforts made to confer with the opponent, but those efforts must be

14

reasonable and the explanation must be complete . . . In other words, the Court requires meaningful, good faith compliance with the rule." *Id.* at *7 (citing *Shehee v. Saginaw Cty.*, 2014 U.S. Dist. LEXIS 192721, at *1 (E.D. Mich. Nov. 19, 2014)) (internal quotations omitted). Rule 37(a)(1) of the Federal Rules of Civil Procedure further requires that a motion to compel "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."

2.  Plaintiff Did Not Meaningfully Attempt to Resolve These Issues Without Judicial Intervention.

Rather than meaningfully attempt to resolve or narrow the issues raised in his Motion to Compel, Plaintiff has determined to bring these issues before the Court. CoreLogic served its responses to Plaintiff's requests for production on September 13, 2018. On October 2, 2018, Plaintiff's counsel emailed CoreLogic's counsel to request that CoreLogic immediately produce the "public record" documents referenced in Request for Production No. 11. CoreLogic's counsel promptly indicated that CoreLogic was working on collecting the public records documents for production, and agreed to participate in a meet and confer call on the issue the following Tuesday, October 9. On October 8, Plaintiff's counsel transmitted to CoreLogic's counsel a 12-page letter detailing the supposed deficiencies with CoreLogic's objections and responses to Plaintiff's requests for production, along with a second 6-page letter regarding CoreLogic's interrogatory responses. Both

letters requested that CoreLogic provide supplemental responses within 14 days, making October 22, 2018 CoreLogic's deadline for complying with the request.

On October 9, 2018, counsel for the parties convened a conference call in which Plaintiff's counsel demanded CoreLogic's immediate production of unspecified public records documents, took issue with CoreLogic's counsel's suggestion that Plaintiff provide an identity theft affidavit (as prescribed by the FCRA), and indicated that Plaintiff intended to move forward with the previously noticed depositions of Michigan state agencies. <u>During the October 9 call, Plaintiff's counsel made no attempt whatsoever to discuss the broad range of requests for production featured in Plaintiff's Motion to Compel.</u> Rather than honor the October 22, 2018 deadline expressed in Plaintiff's meet and confer letters, Plaintiff discontinued communications with CoreLogic regarding the protective order being negotiated by the parties.

On the morning of October 18, CoreLogic's counsel called Plaintiff's counsel to ask whether Plaintiff planned to provide any feedback in response to the last round of edits on the protective order. Plaintiff's counsel informed CoreLogic's counsel that Plaintiff had already filed a motion for protective order and that Plaintiff planned to file a motion to compel that afternoon. CoreLogic's counsel wrote, in an email sent a few minutes after the conclusion of that call:

> Further, as discussed, <u>CoreLogic's complete production was Bates number[ed] and exported last week to a flash drive that has</u>

> <u>been sitting in our offices pending the parties' agreement on a</u>
> <u>protective order</u>. There is no reasonable justification for
> Plaintiffs' forthcoming motion to compel, given these meet and
> confer efforts and our willingness to produce the documents at
> issue.
>
> All that said, CoreLogic is re-running its production now (i.e.,
> removing confidential documents and adjusting Bates
> numbering), and we will send you the non-confidential portion
> of the production later today.

*See* Ex. 3 to Motion to Compel (emphasis in original). Later that day, CoreLogic transmitted its 61-page production of non-confidential documents responsive to Request for Production Nos. 1 and 2, and once again reaffirmed its commitment to produce confidential documents upon the parties' agreement on a protective order.

Here, as in *Fleming*, "Plaintiff did not meaningfully confer with [CoreLogic] to resolve the matter without judicial intervention. Instead, Plaintiff sent a letter to [CoreLogic] demanding the discovery and filed his Motion to Compel less than a month later." *Fleming*, 2017 U.S. Dist. LEXIS 161578, at *5-6. The Court in *Fleming* further admonished counsel for the plaintiff, cautioning that "this Court will not countenance any further motion unless it contains demonstrated effort to cooperate and to engage in meaningful dialogue in an effort to resolve the issues extrajudicially." *Id.* Plaintiff's actions here similarly evidence a failure to comply with the requirement to meet and confer in good faith under Local Rule 37.1.

3.  <u>The Disputed Requests for Production Are Harassing and Overbroad, and Seek Irrelevant and Highly Sensitive Documents.</u>

Plaintiff's clear objective in pushing forward aggressively with overbroad discovery has been to harass and unduly burden CoreLogic in an apparent attempt to leverage a high-dollar settlement where no real claim exists. As explained above, Plaintiff cannot as a matter of fact or law prove that CoreLogic reported inaccurate information in his consumer report, nor can Plaintiff prove that CoreLogic had any way of knowing he was the victim of identity theft in April 2016—over two years before CoreLogic received a copy of the Michigan Letter. And, upon receipt of the Michigan Letter, CoreLogic provided Plaintiff exactly the relief he seeks.

Accordingly, none of the following categories of documents (as described in the Motion to Compel) have any bearing on the disposition of Plaintiff's claims: Manuals Concerning ID Theft (RFP No. 3); Organizational Materials (RFP No. 4); Financial Documents (RFP No. 5); Subscriber and Contribution Agreements (RFP Nos. 6-12 and 29); Data Acquisition Materials (RFP Nos. 13 and 14); Data Matching Procedures (RFP Nos. 15-18); Policies, Procedures, and Practices (RFP Nos. 19, 20, and 25); Notice and Acknowledgement of Risks (RFP Nos. 21-24 and 32); Accuracy and Dispute Budgeting (RFP Nos. 26 and 27); Records and Interpretation (RFP No. 30); Past Testimony (RFP No. 31); and Insurance (RFP No. 33).

Beyond their irrelevance to Plaintiff's claims, CoreLogic additionally objected to many of the categories of documents above on the following grounds:

they impose an undue burden on CoreLogic; they are overbroad as to time and/or scope; they implicate third-party rights to privacy; they seek the production of highly sensitive documents, the disclosure of which could negatively impact CoreLogic's fraud controls; and they seek the production of privileged documents and information. Because CoreLogic's responses are attached to Plaintiff's Motion to Compel at Exhibit 2, CoreLogic does not address each of the requests in turn, but rather relies upon its responses therein.

In his Motion to Compel, Plaintiff has failed to provide any explanation as to why his need for the broad category of documents outweighs the burden and harm to CoreLogic in providing the requested information. Accordingly, CoreLogic requests that the Court deny the Motion to Compel and limit any further discovery in this matter to issues relevant to the disposition of Plaintiff's claims.

## V.     <u>CONCLUSION</u>

For the reasons set forth above, CoreLogic respectfully requests that the Court issue an order: CoreLogic respectfully requests that the Court deny Plaintiff's Motion to Compel and issue an order limiting further discovery in this matter to the issues relevant to Plaintiff's claims.

4825-2446-4762.1

Dated: November 1, 2018          Respectfully submitted,

**FOLEY & LARDNER LLP**

/s/ Jeffrey S. Kopp
Jeffrey S. Kopp (P59485)
500 Woodward Avenue, Suite 2700
Detroit, MI  48226
(313) 234-7100
(313) 234-2800 fax
jkopp@foley.com
*Attorneys for Defendant CoreLogic*
*Rental Property Solutions, LLC*

4825-2446-4762.1

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all counsel of record via filing with the court's CM/ECF service this 1st day of November 2018.

/s/ Jeffrey S. Kopp
Jeffrey S. Kopp

4825-2446-4762.1